1
2
3
4                      UNITED STATES DISTRICT COURT
5                    NORTHERN DISTRICT OF CALIFORNIA
6                            SAN JOSE DIVISION
7

8     MARTIN MALBERG,                    Case No.  5:22-cv-01713-EJD

9                    Plaintiff,          **ORDER GRANTING MOTIONS TO**
                                         **DISMISS**
10          v.

11    JOANNE MCCRACKEN, et al.,          Re: ECF Nos. 11, 12, 38

12                   Defendants.

13          Pro se Plaintiff Martin Malberg brings this suit against Judge Joanne McCracken, Judge

14   Christine Garcia-Sen (with Judge McCracken, the "Judicial Defendants"), the California Attorney

15   General Rob Bonta, and the State of California (with Attorney General Bonta, the "State

16   Defendants").  The Complaint arises from the issuance of a restraining order against Plaintiff

17   initiated by his ex-wife pursuant to the California Domestic Violence Prevention Act.

18          The Judicial Defendants and the State Defendants have each filed separate Motions to

19   Dismiss.  ECF Nos. 11 ("State Mot."), 12 ("Judge Mot.").  Plaintiff has responded to both Motions

20   in a single opposition, ECF No. 22 ("Opp."), and both sets of Defendants have replied.  ECF Nos.

21   23, 25.  Plaintiff has also further filed an unauthorized opposition.  ECF No. 47.

22          Having considered the parties' briefing and construed the pro se pleadings liberally in

23   favor of Plaintiff, the Court GRANTS Defendants' Motions.

24   **I.      FACTUAL BACKGROUND**

25          On January 11, 2021, Plaintiff's wife filed a petition for dissolution and a request for a

26   domestic violence restraining order against Plaintiff in the Superior Court of California, County of

27   Santa Clara (the "State Proceedings").  Compl. § III(B), ECF No. 1; *see also* Request for Judicial

28   Case No.: 5:22-cv-01713-EJD
     ORDER GRANTING MOTIONS TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Notice, Ex. A ("State Ct. Dkt."), ECF No. 18, at 11.[1] Judge McCracken granted the temporary

2   restraining order *ex parte* subject to a subsequent hearing, which was served on Plaintiff around

3   January 28, 2021. *Id.* § III(B); *see also* Judge Mot. 3.

4        The restraining order hearing was continued several times until it was finally heard by

5   Judge Garcia-Sen on March 3, 2022, along with the trial in the State Proceedings, allegedly

6   without Plaintiff's consent or accommodating his request for a jury trial. Compl. § III(B); *see also*

7   Judge Mot. 3–4. On March 4, 2022, the day after the hearing, Judge Garcia-Sen issued a

8   restraining order against Plaintiff ("Restraining Order"). Judge Mot. 4. On March 11, 2022, the

9   Superior Court entered a final judgment of dissolution. *Id.* 4; *see also* State Ct. Dkt., at 6.

10       On March 14, 2022, Plaintiff mailed a letter to Attorney General Rob Bonta, requesting

11  that the Attorney General "take appropriate legal action to enforce compliance with the U.S.

12  Constitution or remove judges who refuse to uphold it in violation of their Oaths of Office." Opp.,

13  Ex. 15. On April 6, 2022, the Attorney General's office responded that his office is prohibited

14  from representing private individuals or providing legal advice or analysis. ECF No. 22, at 54.

15       On March 17, 2022 (before he had received the Attorney General's response), Plaintiff

16  filed the present Complaint and Request for Injunction *pro se* before this Court, naming as

17  defendants the two Superior Court judges that presided over the State Proceedings, Attorney

18  General Bonta, and the State of California. Compl. § I(B). Plaintiff seeks several types of

19  injunctive relief, including an "emergency injunction" of the State Proceedings and the

20  Restraining Order, vacatur of all judgments and all rulings in the State Proceedings, and a "strike

21  down" of the allegedly unconstitutional California Domestic Violence Prevention Act ("DVPA"),

22  at Cal. Family Code §§ 6200, *et seq.* Compl. § V. Plaintiff also seeks $7,000 in damages from

23  each individual defendant to be donated to the "Defending the Republic" organization. *Id.*

24  Additionally, he seeks prison time and criminal referrals against all individual Defendants. *Id.*

25       On May 17, 2022, the State Defendants moved to dismiss the Complaint for lack of subject

26

27  [1] The Court grants both Defendants' Requests for Judicial Notice of the register of actions in the
    State Proceedings, Case No. 21FL000043. ECF Nos. 13, 18.

28  Case No.: 5:22-cv-01713-EJD
    ORDER GRANTING MOTIONS TO DISMISS
    2

matter jurisdiction based on the *Younger* abstention doctrine, as well as Plaintiff's inability to maintain a claim due to the State Defendants' Eleventh Amendment immunity.  ECF No. 11.  On May 19, 2022, the Judicial Defendants moved to dismiss the Complaint for lack of subject matter jurisdiction per the *Rooker-Feldman* and *Younger* abstention doctrine.  Additionally, they move to dismiss, *inter alia*, on the basis that they are protected by judicial immunity.[2]  ECF No. 12.

## II.      LEGAL STANDARD

A motion under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject matter jurisdiction to hear Plaintiff's claims, *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004), whereas a motion under Rule 12(b)(6) tests the legal sufficiency of claims alleged in the complaint.  *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

A jurisdictional attack per Rule 12(b)(1) may be factual or facial.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  A facial attack—the type Defendants brings here—"asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In resolving a facial attack, the Court must "[a]ccept[] the plaintiff's allegations as true and draw[] all reasonable inferences in the plaintiff's favor [to] determine[] whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction."  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). Because it is presumed "that federal courts lack jurisdiction unless the contrary appears affirmatively from the record, the party asserting federal jurisdiction when it is challenged has the burden of establishing it."  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that

---

[2] The Court DENIES Plaintiff's "Motion for Recusal" of Defendants' counsel and removing all their filings on the basis that he has filed separate suits against those attorneys as well.  ECF No. 38.  No rule of professional conduct or conflicts require such a ruling, nor does Plaintiff cite a specific rule.  In any event, such a conflict would not be adverse to Plaintiff.

1    the defendant is liable for the misconduct alleged," which requires "more than a sheer possibility

2    that a defendant has acted unlawfully." *Id.*

3         Pro se pleadings are "liberally construed, particularly where civil rights claims are

4    involved." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  However, pro

5    se plaintiffs also "must follow the same rules of procedure that govern other litigants," and the

6    Court may not "supply essential elements of the claim that were not initially pled." *Rupert v.*

7    *Bond*, 68 F. Supp. 3d 1142, 1153 (N.D. Cal. 2014); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673

8    F.2d 266, 268 (9th Cir. 1982).

9    **III.    DISCUSSION**

10        Although the Complaint does not specifically articulate what claim or on what basis the

11   Plaintiff is seeking relief, the Court broadly construes its allegations in reviewing whether it

12   should be dismissed.  As the bases for this Court's federal question jurisdiction, Plaintiff has cited

13   three authorities: (1) the First Amendment; (2) 18 U.S.C. §§ 241, 242; and (3) 42 U.S.C. § 1983.

14   In the absence of any other allegations more specifically outlining the bases for Plaintiff's claims,

15   the Court will treat these authorities as Plaintiff's asserted claims and address each in turn.

16        The Court will also remark at the outset that Plaintiff has filed several "logic briefs"

17   without reference to any pending motion or requesting any particular relief.  *See, e.g.*, ECF Nos.

18   50, 51, 55.  To the extent that Plaintiff is attempting to supplement his initial complaint, the Court

19   is not permitted to consider facts, allegations, or legal claims beyond the originally filed

20   Complaint.  *See supra* Section II.  Accordingly, the Court here only considers the allegations made

21   in the Complaint (ECF No.1) and arguments in Plaintiff's opposition brief (ECF No. 22).

22        **A.    First Amendment**

23        Plaintiff first invokes the First Amendment as a basis for federal question jurisdiction.

24   Compl. § II(A).  However, the First Amendment only sets forth rights and, by itself, does not

25   provide a means to enforce those rights in court.  Plaintiff does, however, cite 42 U.S.C. § 1983, a

26   statute that *does* provide a vehicle for private citizens to enforce their federal constitutional rights.

27   *See, e.g.*, *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992).

28   Case No.: 5:22-cv-01713-EJD
     ORDER GRANTING MOTIONS TO DISMISS
     4

United States District Court
Northern District of California

1    Accordingly, the Court will treat the Complaint's citation to the First Amendment as the asserted

2    right for his claim under 42 U.S.C. § 1983, which the Court addresses at Section III(C).

3    **B.    18 U.S.C. §§ 241, 242**

4    In his Complaint, Plaintiff cites two federal criminal statutes for conspiracy to violate

5    rights, 18 U.S.C. §§ 241, 242; and in his opposition, Plaintiff also mentions the federal criminal

6    statute for seditious conspiracy, 18 U.S.C. § 2384.  Compl. §§ II(A), V; Opp. 9–10.  Plaintiff

7    appears to seek criminal penalties against Defendants, including prison time, criminal penalties,

8    and "criminal charges/trial referral for Treason."  Compl. § V.

9    It is well-established that "private individuals lack standing to assert claims for relief based

10   on criminal statutes."  *Redmond v. United States*, No. 22-CV-01107-TSH, 2022 WL 1304472, at

11   *3 (N.D. Cal. May 2, 2022) (listing cases); *see also Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th

12   Cir. 1980) ("Appellant also claimed relief under 18 U.S.C. §§ 241 and 242.  These criminal

13   provisions, however, provide no basis for civil liability."); *Carmichael v. Cnty. of San Diego*, 2019

14   WL 6716728, at *6 (S.D. Cal. Dec. 10, 2019) (finding no private cause of action under 18 U.S.C.

15   § 2384).  Plaintiff's opposition does not provide any explanation for why he believes a private

16   citizen—as opposed to a federal prosecutor—has standing to enforce federal criminal statutes.

17   Accordingly, to the extent Plaintiff attempts to seek criminal penalties by filing this civil

18   suit, the Court will DISMISS such claims for lack of standing WITHOUT LEAVE TO AMEND.

19   **C.    42 U.S.C. § 1983**

20   As noted above, the Court will construe the Complaint as primarily asserting a § 1983

21   claim for deprivation of Plaintiff's First Amendment rights.  However, Defendants have

22   challenged the Court's subject matter jurisdiction, which the Court must resolve before turning to

23   any merits of any case.  *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998).

24   **1.    *Rooker-Feldman* Doctrine**

25   The Judicial Defendants have argued that this Court may not hear this case under the

26   *Rooker-Feldman* doctrine.  Under this doctrine, federal district courts do not have appellate

27   jurisdiction to hear cases that are, in effect, appeals from state court judgments.  *See, e.g.*,

28   Case No.: 5:22-cv-01713-EJD
     ORDER GRANTING MOTIONS TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

1    *Carmona v. Carmona*, 603 F.3d 1041, 1050 (9th Cir. 2010).  This is because, "[a]bsent express

2    statutory authorization, only the Supreme Court has jurisdiction to reverse or modify a state court

3    judgment."  *Henrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir. 2007).  The Supreme Court

4    has noted that this doctrine bars "cases brought by state-court losers complaining of injuries

5    caused by state-court judgments rendered before the district court proceedings commenced and

6    inviting district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic*

7    *Indus. Corp.*, 544 U.S. 280, 284 (2005).  Courts in the Ninth Circuit apply this test by considering

8    whether plaintiff (1) "asserts as a legal wrong an allegedly erroneous decision by a state court,"

9    and (2) "seeks relief from a state court judgment based on that decision."  *Carmona*, 603 F.3d at

10   1041 (quoting *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003)).

### a.    Application

12   All elements of *Rooker-Feldman* are present here.  First, the Complaint makes clear that

13   the target of Plaintiff's ire is the Restraining Order entered against him, *i.e.*, he "asserts as a legal

14   wrong an allegedly erroneous decision by a state court."  *Carmona*, 603 F.3d at 1041.  Despite

15   how broadly the Court construes this pro se Complaint, there is little room for any other

16   conclusion when Plaintiff openly alleges that his "constitutional rights were violated by imposition

17   of a Restraining Order based on an unconstitutional 'words are violence' concept ingrained in CA

18   statute."  Compl. § III(C).  These allegations pervade the rest of the Complaint:

19   • Judge McCracken "imposed a Restraining Order in violation of the 1st Amendment based

20       on protected speech text messages," Compl. § III(A);

21   • Judge Garcia-Sen "persisted in attempting to enforce the [Restraining Order] to prevent

22       [him] from communicating health information to [his] wife," *id.*;

23   • The Restraining Order "seiz[ed] all of [his] personal property without a warrant," *id.*; and

24   • Judge Garcia-Sen "conducted a non-jury trial without [his] consent . . . and without ever

25       providing any charging documents or specifying the violation of the law."

26   Given these direct admissions, the Court finds that Plaintiff is indeed claiming that the state

27   court's Restraining Order was erroneous, satisfying the first element of *Rooker-Feldman*.

28   Case No.: 5:22-cv-01713-EJD
ORDER GRANTING MOTIONS TO DISMISS

The Court also finds that the second *Rooker-Feldman* requirement—seeking relief from a state court judgment based on the allegedly erroneous decision—is also met here.  Of the eight remedies the Complaint seeks, at least three purport to nullify the Restraining Order in some way:

- Emergency Injunction on [State Proceedings] against all Defendants #1–4;

- Removal of the Restraining Order and nullify it *ab initio*;

- Vacate all judgements in [State Proceedings]; Nullify all rulings in [State Proceedings] OR dismiss the case.

Compl. § V.  For the purposes of the second *Rooker-Feldman* element, it is difficult to envision a clearer example of a plaintiff attempting to blatantly end run an adverse state court judgment. Several federal courts in California have also used the *Rooker-Feldman* doctrine to dismiss complaints with remarkably similar allegations challenging California domestic violence restraining orders.  *See*, *e.g.*, *Baker v. California*, 2018 WL 4057005, at *3 (C.D. Cal. July 16, 2018) (collecting cases), report and recommendation adopted, 2018 WL 4057260 (C.D. Cal. Aug. 16, 2018), aff'd, 785 F. App'x 478 (9th Cir. 2019).

Attorney General Bonta suggests that the underlying State Proceedings may still be ongoing because Plaintiff had not yet filed an appeal, which potentially defeats the application of *Rooker-Feldman*.  State Mot. 3, 9.  However, "[p]roceedings end for *Rooker–Feldman* purposes when the state courts finally resolve the issue that the federal court plaintiff seeks to relitigate in a federal forum, even if other issues remain pending at the state level."  *Mothershed v. Justs. of Supreme Ct.*, 410 F.3d 602, 604 n.1 (9th Cir. 2005); *see also Eicherly v. O'Leary*, 721 F. App'x 625, 627 (9th Cir. 2018) (holding that plaintiffs "may not avoid *Rooker-Feldman*'s bar and obtain review of adverse state court decisions in federal district court just because at least one of their cases remains pending on appeal in state court").  Here, the Restraining Order was issued on March 4, 2022, and the Superior Court entered judgment on March 11, 2022.  *See* State Ct. Dkt., ECF No. 18, at 6–7.  Furthermore, Plaintiff has never suggested that the underlying State Proceedings are still ongoing or otherwise active.  The Court, therefore, finds that the State Proceedings' decisions at issue here are sufficiently final for the purposes of *Rooker-Feldman*.

Case No.: 5:22-cv-01713-EJD
ORDER GRANTING MOTIONS TO DISMISS

7

United States District Court
Northern District of California

1        Accordingly, the Court finds that *Rooker-Feldman* should apply in this case.  However, the

2    doctrine may not apply to all claims or relief that Plaintiff may be seeking in this case.

3                               **b.        Constitutional Challenges**

4        The Court notes that, although much of the Complaint stems around Plaintiff's grievances

5    with the Restraining Order, the Complaint could also conceivably be construed as asserting a

6    facial attack on the DVPA's constitutionality more broadly.  Compl. § V (seeking "Strike down of

7    CA domestic violence prevention statute, confirm it is unconstitutional ab initio"); *see also* Opp.

8    2–3.  To the extent Plaintiff is challenging the constitutionality of the DVPA as a general matter,

9    that type of broad-based facial challenge is not necessarily barred by the *Rooker-Feldman*

10   doctrine, so long as the constitutional challenge is not "inextricably intertwined" with the judicial

11   decision.  *See, e.g.*, *Noel*, 341 F.3d at 1157 n.6; *see also Baker*, 2018 WL 4057005, at *3 n.1.

12   (holding that, although as-applied constitutional challenges to the DVPA are barred, "Plaintiff's

13   facial challenges to the DVPA, on the other hand, are not barred by *Rooker-Feldman*").

14       That said, the Complaint fails to allege any meaningful contours to the purported facial

15   constitutional attack on the DVPA such that the Court could disentangle Plaintiff's constitutional

16   challenge from the impermissible *de facto* appeal of the State Proceedings.  Presumably, the

17   challenge is for violating the First Amendment, but Plaintiff does not identify what particular

18   provision or function of the DVPA infringed upon his First Amendment rights.  The most that the

19   Complaint and the opposition has alluded to is that "[a]ny court order that uses an unconstitutional

20   'law' to 'abridge the freedom of speech' of a U.S. citizen is a violation of the First Amendment . .

21   . and is automatically null and void ab initio."  Opp. 3; *see also* Compl. § III(A) (alleging the

22   Restraining Order was "in violation of the 1st Amendment based on protected speech text

23   messages using the 'words are violence' premise").  These allegations, however, are mostly

24   tautological and do not provide enough detail for the Court to separate Plaintiff's facial

25   constitutional attack from the State Proceedings, especially given Plaintiff's consistent and

26   frequent references to his own Restraining Order.  If Plaintiff wishes to assert such a challenge to

27   the DVPA, he must do so in such a manner that distinguishes his constitutional arguments from

28   Case No.: 5:22-cv-01713-EJD
     ORDER GRANTING MOTIONS TO DISMISS

United States District Court
Northern District of California

1    the Restraining Order imposed against him.  Otherwise, his constitutionality challenge would

2    remain barred by the *Rooker-Feldman* doctrine as a *de facto* appeal from the State Proceedings.

3            In sum, the Court finds that the Complaint appears to challenge and seek relief from the

4    Restraining Order in the underlying state action, which would bar this action under *Rooker-*

5    *Feldman*.  To the extent the Complaint challenges the constitutionality of the DVPA on its face,

6    those challenges would only be barred if they are "inextricably intertwined" with the State

7    Proceedings.  However, the Court is unable to ascertain the specifics of the constitutional

8    challenge as currently pled, and therefore the Court is without subject matter jurisdiction to hear

9    even the constitutional challenges to the DVPA.

10            Accordingly, the Court will DISMISS the Complaint for lack of subject matter jurisdiction.

11    The Court proceeds to consider whether it should do so with or without leave to amend.

12                    **2.        Judicial Immunity**

13            Although the Court acknowledges that the Complaint could potentially be construed in a

14    narrow manner that avoids the *Rooker-Feldman* bar, there is no such interpretation that would

15    permit this Complaint to proceed against the Judicial Defendants at least.

16            First, no amount of favorable construction can yield an interpretation that both implicates

17    the Judicial Defendants without also functioning as a *de facto* appeal of their orders.  Put

18    differently, any claim that can be directed at the Judicial Defendants would almost certainly be

19    "inextricably intertwined" with their judicial decisions.  In that respect, their "liability" is entirely

20    within the scope of *Rooker-Feldman*.

21            Second, even if this Court somehow has subject matter jurisdiction over the Judicial

22    Defendants, judges are absolutely immune from a civil rights suit based on actions taken in their

23    judicial capacity, unless they acted in the clear absence of all jurisdiction.  *See Mireles v. Waco*,

24    502 U.S. 9, 11–12 (1991); *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978).  Judicial immunity

25    "is not overcome by allegations of bad faith or malice," *Mireles*, 502 U.S. at 11, or an assertion

26    that the judge acted in error or exceeded his authority, *see Stump*, 435 U.S. at 1105.  Plaintiff

27    attempts to circumvent this immunity by arguing "once Plaintiff [*sic*] rights were violated on

28    Case No.: 5:22-cv-01713-EJD
ORDER GRANTING MOTIONS TO DISMISS
9

1    January 11, 2021, [Judge McCracken] was no longer acting in any judicial capacity that would

2    afford immunity of ANY kind."  Opp. 8.  However, even if accepted as true, this theory does not

3    mean the Santa Clara County Superior Court over which Judge McCracken presides no longer had

4    *jurisdiction* over Plaintiff.  *See Stump*, 435 U.S. at 359–60.  As the Supreme Court has remarked,

5    "[i]f judicial immunity means anything, it means that a judge will not be deprived of immunity

6    because the action he took was in error or was in excess of his authority."  *Mireles*, 502 U.S. at

7    12–13 (internal quotation marks and ellipses omitted).

8         Plaintiff's reliance on *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), is misplaced.  That case

9    did not involve or address the limitations of judicial immunity; in fact, the first sentence in that

10   order reads, "[t]he issue in this case is the scope of the immunity available to the *senior aides and*

11   *advisers of the President of the United States*."  *Id.* at 802 (1982) (emphasis added).  Moreover, it

12   specifically confirmed the continued vitality of judicial immunity.  *Id.* at 810–11 ("We have

13   recognized that the judicial . . . functions require absolute immunity.").

14        Accordingly, any claim against Judge McCracken and Judge Garcia-Sen would fall within

15   Rooker-Feldman's scope and, in any event, they are shielded by absolute judicial immunity.  They

16   are not proper parties under any possible construction of the Complaint.  The Court therefore

17   DISMISSES both Judicial Defendants WITHOUT LEAVE TO AMEND.

18                    **3.    Eleventh Amendment Immunity**

19        With respect to the State Defendants, the State and its employees are generally protected

20   from suit by Eleventh Amendment immunity. *See Will v. Michigan Dep't of State Police*, 491 U.S.

21   58, 66 (1989); *Ass'n des Eleveurs de Canards et d'Oies du Quebec* ("*Quebec*") *v. Harris*, 729 F.3d

22   937, 943 (9th Cir. 2013).  This immunity fully shields the State of California from Plaintiff's facial

23   constitutional attack, but it does not necessarily cover suits against state officers in their official

24   capacities for prospective equitable relief, a doctrine referred to as *Ex parte Young*.  *Quebec*, 729

25   F.3d at 943 (citing *Ex parte Young*, 209 U.S. 123 (1908)).  The state official named in an *Ex parte*

26   *Young* suit must be one with a "fairly direct" connection to the challenged statute's enforcement.

27   *Quebec*, 729 F.3d at 943.

28   Case No.: 5:22-cv-01713-EJD
     ORDER GRANTING MOTIONS TO DISMISS

United States District Court
Northern District of California

The Attorney General argues that Plaintiff cannot maintain an action under *Ex parte Young* because the Complaint contains no allegations that he had violated federal law or the U.S. Constitution.  State Mot. 8.  Additionally, he argues that the Attorney General has no authority to vacate the Restraining Order or any other judicial decisions because the California judicial power is vested in the state judiciary.  *Id.*  However, the Attorney General does not address whether he would be a proper defendant for suit challenging the DVPA's constitutionality.  *See*, *e.g.*, *Baker*, 2018 WL 4057005, at *1 (noting that plaintiff had named the California Attorney General in challenging the constitutionality of the DVPA); *cf. Snoeck v. Brussa*, 153 F.3d 984, 989 (9th Cir. 1998) ("The attorney general is nonetheless the proper defendant for Eleventh Amendment purposes because his or her job is to initiate legal proceedings to persuade the courts to enforce the statute, even though some other body ultimately decides whether and what punishment is appropriate.") (Tashima, J., dissenting).

That said, Plaintiff has not alleged any facts regarding whether or how the Attorney General maintains any enforcement authority over the DVPA.  The most he has alleged is that the Attorney General "is responsible for enforcing compliance with the U.S. Constitution per his oath."  Compl. § III(A).  However, "a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit."  *Quebec*, 729 F.3d at 943.  Nor does the DVPA appear to be a statute that is enforceable by California district attorneys, over whom the Attorney General has "direct supervision."  Cal. Const. art. 5, § 13; *see also Ervin v. California*, 2018 WL 3375058, at *6 (S.D. Cal. July 11, 2018) (finding that plaintiff failed to allege that the "Attorney General [] has a specific duty to enforce the Domestic Violence Prevention Act [or] an adequate connection between Attorney General [] and the challenged statute").  Indeed, there was no district attorneys involved in the State Proceedings here.  *See* State Ct. Dkt., ECF No. 18, at 4–5.  However, this does not mean that Plaintiff could not potentially amend his Complaint to allege facts evidencing a nexus between the DVPA and the Attorney General or to add a proper state official defendant for the purposes of *Ex parte Young*.

* * *

Because the Complaint alleges that the Santa Clara County Superior Court had entered an allegedly erroneous Restraining Order against Plaintiff and requests various injunctive relief to evade compliance with the Restraining Order, Plaintiff's § 1983 claim falls cleanly within the scope of the *Rooker-Feldman* doctrine.  Plaintiff is effectively asking this Court to act as an appellate court over its state counterpart, a function that this Court has no jurisdiction to perform.[3]

To the extent Plaintiff seeks to challenge the facial constitutionality of the DVPA, he may do so only if the constitutional challenge is not "inextricably intertwined" with the California Superior Court's judicial decisions and orders.  However, the Complaint's current allegations challenging the statute's constitutionality are too vague for the Court to make such a finding.  That said, the Court also cannot conclude that permitting Plaintiff to amend for the limited purpose of alleging additional facts to support his constitutionality challenges would be futile.

## IV.   CONCLUSION

Based on the foregoing, the Court GRANTS the Defendants' Motions to Dismiss.  The Complaint is DISMISSED as follows:

- DISMISSED WITHOUT LEAVE TO AMEND to the extent Plaintiff seeks to enforce 18 U.S.C. §§ 241, 242;
- DISMISSED WITHOUT LEAVE TO AMEND as to Judge Joanne McCracken and Judge Garcia-Sen;
- DISMISSED WITHOUT LEAVE TO AMEND as to the State of California; and
- DISMISSED WITH LEAVE TO AMEND as to Attorney General Bonta for the limited purpose of amending Plaintiff's facial constitutional challenge to the DVPA.

To that end, Plaintiff may amend his Complaint by adding additional defendants.

If Plaintiff wishes to address the deficiencies identified in this order and believes he can do so in compliance with the standards set forth in Federal Rules of Civil Procedure 8(a) and 11(b),

---

[3] The proper court to hear an appeal from the Santa Clara County Superior Court is the California Court of Appeal for the Sixth Appellate District.

United States District Court
Northern District of California

he may file an amended complaint within 30 days of the date of this Order.

The Court also informs Plaintiff that the Federal Pro Se Program at the San Jose Courthouse provides free information and limited-scope legal advice to pro se litigants in federal civil cases. The Federal Pro Se Program is available by appointment by calling (408) 297-1480. In addition, the Court's webpage offers resources for pro se litigants, including a pro se handbook free of charge. These resources may be accessed at: https://www.cand.uscourts.gov/pro-se-litigants/.

**IT IS SO ORDERED.**

Dated: March 31, 2023

EDWARD J. DAVILA
United States District Judge